IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BOZANA KRUPNIKOVIC, as Personal Representative of the Estate of Strahinja Krupnikovic, Deceased; BOZANA KRUPNIKOVIC, individually and as next of kin; and BOZANA KRUPNIKOVIC, as Mother and Guardian of A.K. a Minor and next of kin;<br><br>Plaintiff,<br><br>v.<br><br>STERLING TRANSPORTATION SERVICES, INC., UNKNOWN SPOUSE, HEIRS, DEVISEES, LEGATEES, EXECUTORS, ADMINISTRATORS, and ASSIGNS, of Thomas House, Deceased, Individually; LW MILLER TRANSPORTATION HOLDINGS, INC., and JAMES GANSER, Individually,;<br><br>Defendants. | 8:14CV352<br><br>MEMORANDUM AND ORDER |

This matter is before the court on motions for partial summary judgment filed by defendant Sterling Transportation Services, Inc. ("Sterling"), Filing Nos. 161 and 163; and on motions in limine to exclude the testimony of plaintiff's expert Dr. Stan V. Smith, filed by defendant Sterling, Filing No. 159, and defendants LW Miller Transportation Holdings, Inc. and James Ganser, ("Miller"), Filing No. 157.[1] This is an action for negligence. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332.

This case involves a fatal three-way tractor-trailer accident that occurred on July 3, 2012, near Silver Creek, Nebraska. See Filing No. 130, Order at 1. A tractor-trailer

---

[1] See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

driven by the plaintiff's decedent, Strahinja Krupnikovic, collided with a tractor-trailer operated by defendant James Ganser and owned by defendant Miller. After that initial collision, Strahinja Krupnikovic's tractor-trailer collided with a tractor-trailer operated by Thomas House and owned by defendant Sterling. Krupnikovic and House both died in the collision. Bozana Krupnikovic, the widow of Strahinja Krupnikovic, brings this action in her capacity as personal representative of her deceased husband's estate; on her own behalf; and on behalf of her minor daughter.[2]

I.  MOTIONS FOR SUMMARY JUDGMENT

Sterling moves for partial summary judgment on the plaintiff's claims for pre-death pain and suffering; "loss of value of life" damages; negligent hiring, supervision, and entrustment; punitive damages; direct liability; and any claims based on allegations that defendant House failed to maintain his tractor-trailer in the appropriate lane of travel or attempted to change lanes without first ascertaining such change could be made safely.[3] Filing Nos. 162 and 164, Sterling Briefs. In response, the plaintiff concedes the motion as to: any claim that she is entitled to pre-death pain and suffering and mental anguish damages on behalf of the decedent; any claims of negligent hiring, negligent supervision, negligent entrustment, negligent training, and negligent retention by defendant Sterling; and her claim to punitive damages. Accordingly, the court finds the

---

[2] In her Amended Complaint, the plaintiff cites only the Nebraska survival statute, Neb. Rev. Stat. § 30-810, but the parties apparently contemplate a wrongful death claim under Neb. Rev. Stat. § 25-1401 *et seq.* as well as a survival claim. *See* Filing No. 162, Sterling Brief. The fact that the plaintiff brings the action in a personal as well as representative capacity indicates that such is the case.

[3] In response to a motion filed by defendants Miller and Ganser, the plaintiff earlier conceded to dismissal of her claims against those defendants for punitive damages, predeath suffering and mental anguish damages, and any claims of negligence by Ganser based on allegation that Ganser left his lane of travel and collided with Strahinja Krupnikovic. *See* Filing No. 177, Order.

defendant's motion should be granted to the extent of the plaintiff's concessions and those claims will be dismissed.

The plaintiff states, however, that she opposes Sterling's motion for summary judgment as to her claim for damages for loss of value of life and as to her claim that Sterling is vicariously liable for House's breach of his duty to manage, maintain, and control the vehicle and follow the rules of the road. However, she also incorporates her response to the defendants' *Daubert* motions wherein she states that she stipulates and concedes that Dr. Smith's testimony as to loss of value of life and loss of society or relationship will not be presented as evidence at trial. She also asserts that she does not stipulate to the exclusion of any other evidence relating to loss of society. *See* Filing Nos. 174 and 175, Plaintiff's Briefs. It thus appears that the issue of "loss of enjoyment of life" damages is moot.[4]

The plaintiff also states that all of her claims against defendant Sterling are based on vicarious liability under the theory of respondeat superior for the alleged acts of its employee, Thomas House, and not on a theory that Sterling is directly liable. There does not appear to be any dispute that House was operating within the course and scope of Sterling's business at the time of the collision and any alleged negligence of House is imputed to Sterling. Sterling's liability is derivative of House's negligence and contingent upon a finding of negligence.

---

[4] Although Sterling argues that loss of enjoyment of life damages are not recoverable under Nebraska law, that is not the case. As discussed *infra* at 9, such so-called "hedonic damages" are subsumed within a plaintiff's damages for pain and suffering and are not a separate category of damages. *Golnick v. Callender*, 860 N.W.2d 180, 195 (Neb. 2015).

3

In view of the foregoing, the only issue remaining for resolution in this motion is whether Sterling has shown as a matter of law that House did not commit negligence in several particulars and therefore is not liable to the plaintiff for those alleged breaches of duty. Specifically, Sterling challenges the allegations that House failed to maintain his tractor-trailer in the appropriate lane of travel and attempted to change lanes without ascertaining such change could be made safely. It argues that uncontroverted evidence shows that Sterling is entitled to judgment as a matter of law with respect to any such allegations of negligence.

In response, the plaintiff controverts any suggestion that the challenged allegations of negligence are her sole contentions of House's negligent conduct. She states

> At this stage in the proceedings, Plaintiff does not assert that House was in the westbound lane of traffic at the time of the collision, nor does she assert that House's attempt to change lanes was the sole cause of the collision. Rather, Plaintiff maintains that House's aggressive driving in the minutes and miles leading up to the collision, and at the time of the collision, was a breach of his duty to operate, manage, maintain and control his vehicle in a reasonably safe manner.

[Filing No. 173-3](), Plaintiff's Brief at 5. She also contends there is sufficient evidence to overcome a motion for summary judgment as to that claim. She argues the testimony of James Ganser and of the plaintiff's expert, Jay Przybyla, show that there are genuine issues of material fact on whether House breached his duty of reasonable care.

Whether defendants breached duties of due care is the ultimate issue in this negligence action. The parties have submitted deposition testimony in support of their respective positions. The court has reviewed that evidence and finds that there is a genuine issue of material fact with respect to the ultimate issue whether defendant

4

House breached duties of care. There is evidence that House may have been following too closely. There is evidence from which a jury could find that House breached his duty to control his vehicle and follow the rules of the road. Accordingly, there remain genuine issues of material fact and defendant Sterling has not shown that it is entitled to judgment as a matter of law on all of the plaintiff's claims.

The allegations of negligence set out in the plaintiff's complaint will not define the issues at trial. The order on final pretrial conference will supersede the pleadings. The final pretrial conference has not yet occurred. The parties can narrow the issues at that time. Further, the jury will be instructed only on allegations of negligence that are supported by evidence at trial.

In view of the foregoing, the court finds Sterling's motion for partial summary judgment should be granted with respect to the issues conceded by the plaintiff and denied in all other respects.

II. *DAUBERT* MOTIONS

    A.    Background

Dr. Stan V. Smith is the plaintiff's damages expert. The record shows he has a Bachelor's Degree from Cornell University and a Master's Degree and Ph.D. in Economics from the University of Chicago. *See* [Filing No. 175-1](), Expert Report. He wrote a textbook on Forensic Economic Damages and has created and taught courses in Forensic Economics. He has performed economic analyses in many cases and has testified to the value of household services.

Defendants Sterling and Miller generally move to exclude his testimony on four categories of damages: (1) loss of wages; loss of household/family services, including

housekeeping, advice and counsel (C) loss of value of life, and (D) "loss of society or relationship." Filing No. 160, Sterling's Brief at 7; Filing No. 158, Miller's Brief at 2. Essentially, they argue that Dr. Smith's testimony as to lost earnings is not supported by adequate foundation, his method of determining lost wages is unreliable, and his calculations amount to double recovery. Further, they argue that loss of household/family services are incapable of computation and are questions for the jury under Nebraska law. They also argue that Dr. Smith's purported fiscal formula for establishing damages for loss of services, comfort and companionship is improper as irrelevant and unfairly prejudicial.

    B.    Law

        1.    *Daubert*

Admissibility of expert testimony is governed by Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993). Trial judges are the gatekeepers to exclude unreliable scientific testimony. *Id.* at 597. This gatekeeper function applies to all expert testimony, not just testimony based in science. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

Proposed expert testimony must meet three prerequisites in order to be admitted under Rule 702: first, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact; second, the proposed witness must be qualified to assist the finder of fact; and third, the proposed evidence must be reliable or trustworthy in an evidentiary sense. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). Expert testimony assists the

triers of fact when it provides information beyond their common knowledge. *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003).

*Daubert* established a non-exclusive checklist for trial courts to use in assessing the reliability of expert testimony,[5] but not all of the *Daubert* factors necessarily apply to non-scientific evidence. *United States v. Holmes*, 751 F.3d 846, 850 (8th Cir. 2014) (finding the reliability of non-scientific expert testimony must rest on reliable principles and methods, but the "relevant reliability concerns may focus upon personal knowledge or experience" rather than scientific foundations) (quoting *Kumho Tire*, 526 U.S. at 150). "[N]othing in Rule 702, *Daubert*, or its progeny requires 'that an expert resolve an ultimate issue of fact to a scientific absolute in order to be admissible.'" *Kudabeck*, 338 F.3d at 861 (quoting *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)).

"[C]ases are legion that, correctly, under *Daubert*, call for the liberal admission of expert testimony." *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014). "As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* at 562 (quoting *Daubert*, 509 U.S. at 590). Generally, if the methodology employed by an expert is scientifically valid and could properly be applied to the facts of the case, it is reliable enough to assist the trier of fact. *Id.* at 564.

---

[5] Those factors are: whether the theory or technique can be and has been tested; whether the theory or technique has been subjected to peer review and publication; the known or potential rate of error; whether the theory has been generally accepted; whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case. *Lauzon,* 270 F.3d at 687.

7

2. Damages

Under Nebraska law, a wrongful death action and a survival action are two distinct causes of action which may be brought by a decedent's personal representative. *In re Estate of Panec*, 864 N.W.2d 219, 225 (Neb. 2015) (noting they are frequently joined in a single action, but are conceptually separate). A wrongful death action is brought on behalf of the widow or widower and next of kin for damages they have sustained as a result of the decedent's death. *Id.* Such damages include the pecuniary value of the loss of the decedent's support, society, comfort, and companionship. *Id.* The amount of damages to be awarded in a wrongful death action is a question for the jury. *See Maloney v. Kaminski*, 368 N.W.2d at 458 (Neb. 1985).

The measure of damages in such a case is the contributions the decedent would have made to the statutory beneficiaries had the decedent not died. *Id.* The amount recoverable is the financial loss, including lost money and lost services that have a monetary value, which the statutory beneficiaries have suffered as a result of decedent's death. *Id.* ("We have held that a wrongful death plaintiff may only recover for . . . a loss which has a money value.") Loss of a decedent's support, society, comfort, and companionship has a pecuniary value that a jury can determine, in its sound discretion, based on consideration of the circumstances of each case. *See id.* at 458; *In re Estate of Panec*, 864 N.W.2d at 225. Although loss of earnings is not a proper measure of damages in a wrongful death action, evidence of lost earnings is relevant and admissible to show pecuniary loss to the dependent of a deceased, including the amount they would have received from lost earnings. *Darnell v. Panhandle Co-op Ass'n*, 120 N.W.2d 278, 286 (Neb. 1963); *see Westring v. Schwanke*, 177 N.W.2d 506,

508 (Neb. 1970) (noting the recovery is limited to the value of the services or the amounts which the beneficiaries would have received from the earnings of the deceased).

In contrast, an action under the Nebraska survival statute, Neb. Rev. Stat. § 25-1401, is the continuance of the decedent's own right of action which he or she possessed prior to his or her death. *In re Estate of Panec*, 864 N.W.2d at 225. The survival action is brought on behalf of the decedent's estate and encompasses the decedent's claim for predeath pain and suffering, medical expenses, funeral and burial expenses, and any loss of earnings sustained by the decedent, from the time of the injury up until his or her death. *Id.* Damages for loss of enjoyment of life are subsumed within a plaintiff's damages for pain and suffering and are not a separate category of damages. See *Golnick v. Callender,* 860 N.W.2d 180, 195 (Neb. 2015). A decedent's pain and suffering and medical expenses are recoverable in a survival action, but not in a wrongful death action. *In re Estate of Panec*, 864 N.W.2d at 227.

C. Discussion

The court finds that the defendants' *Daubert* motions should be denied. The plaintiff's statement that there is insufficient evidence to support her claim for the decedent's predeath pain and suffering renders the issue of expert testimony on loss of enjoyment of life moot. She concedes she will not present expert testimony on the value of loss of enjoyment of life or loss of society or relationship at trial.

The defendants do not challenge Dr. Smith's credentials and the court finds he appears to be qualified to testify with respect to the economic value of the decedent's services. The record shows he has education and experience in economics and the

determination of damages.  Based on his qualifications and experience, his testimony is likely reliable enough to assist the trier of fact.  The expert's methodology appears to be scientifically valid and can properly be applied to the facts of this case.  The defendants' criticism of Dr. Smith's formulas and methods is properly the subject of cross-examination.

The defendants' objections to Dr. Smith's opinions on the projected economic loss resulting from the death of Strahinja Krupnikovic, including lost earnings and earning capacity, also go more to the weight than to the admissibility of the testimony.  The expert's opinion does not appear to be based on speculation or conjecture.  There is some evidence that the decedent bought a second truck and intended to hire and manage drivers.  Whether the plaintiff establishes that the decedent's trucking business would have expanded is an issue for the jury.  Also, Dr. Smith's opinion on the value of household services is sufficient for a reasonable projection of the decedent's value to the household in that regard.  The value of those household services is recoverable.

Any possible confusion due to perceived conflation of the damages for "household services" with damages for "comfort and companionship" can be addressed at trial in argument or appropriate jury instructions.  Further, any potential confusion between the elements of damages recoverable by the estate in the survival action and by the widow and child in the wrongful death action can be remedied in the jury instructions. Accordingly, the court finds the motions in limine should be denied.

IT IS ORDERED:

1. Defendant's motions for summary judgment (Filing Nos. 161 and 163) are granted in part and denied in part as set forth in this order.

2. Defendants' *Daubert* motions in limine (Filing Nos. 157 and 159) are denied.

Dated this 11th day of September, 2017.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge